UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

ROBERTO JAIME PRADO
OROZCO,

                Petitioner,

                              Case No.: 2:26-cv-11985

       v.                       Hon. Gershwin A. Drain

KEVIN RAYCRAFT, Director of
U.S. Immigration and Customs
Enforcement, Enforcement and
Removal Operations, Detroit Field
Office, JULIE MASSENGILL,
Monroe County Jail
Administrator, SECRETARY OF
U.S. DEPARTMENT OF
HOMELAND SECURITY, U.S.
DEPARTMENT OF
HOMELAND SECURITY,
TODD BLANCHE, U.S. Attorney
General, and EXECUTIVE
OFFICE FOR IMMIGRATION
REVIEW,

                Respondents.

_____/

**<u>OPINION AND ORDER DENYING WITHOUT PREJUDICE PETITIONER
ROBERTO JAIME PRADO OROZCO'S PETITION FOR HABEAS
CORPUS [ECF No. 1] AND DISMISSING ALL RESPONDENTS EXCEPT
KEVIN RAYCRAFT</u>**

1

Petitioner Roberto Jaime Prado Orozco ("Petitioner") is a Mexican national who is currently detained in Immigration and Customs Enforcement ("ICE") custody in the Monroe County Jail. The Court previously granted Petitioner's first Petition for Habeas Corpus, finding that Petitioner was entitled to a bond hearing under 8 U.S.C. § 1226(a) and ordering that he receive a bond hearing or be released from custody. Petitioner received a bond hearing, but the Immigration Judge ("IJ") found that Petitioner was a flight risk and denied bond.

Petitioner has filed a second Petition for Habeas Corpus and now argues that his continued custody—despite receiving a bond hearing—is unlawful and unconstitutional for a variety of reasons.  The Court concludes that a hearing will not aid in the disposition of this Petition and will determine the outcome on the briefs. E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Petition for Habeas Corpus [ECF No. 1] is DENIED WITHOUT PREJUDICE. In addition, Kevin Raycraft, Director of ICE Enforcement and Removal Operations, Detroit Field Office, is the only properly named respondent. All other respondents are dismissed as improperly named.

## I.    BACKGROUND

Petitioner Roberto Jaime Prado Orozco is a citizen of Mexico with a long immigration history in the United States. He was first encountered by immigration authorities in the United States in Trenton, Michigan on or about March 23, 1999,

2

and he was ordered removed from the country on February 11, 2000. ECF No. 6-2, PageID.696. Several years later, immigration authorities encountered Petitioner again in Detroit, Michigan. *Id.* Petitioner chose to voluntarily depart the United States in lieu of removal, which he did on April 12, 2007. *Id.*; ECF No. 6-3.

Petitioner once again returned to the United States at an unknown place and an unknown time without inspection or admission at the border. ECF No. 6-2, PageID.695–96. ICE learned of Petitioner's re-entry and conducted a field operation to apprehend him on or about May 20, 2025. *Id.* at PageID.695. The operation was successful and ICE arrested Petitioner. He was subjected to mandatory detention without an opportunity for bond under 8 U.S.C. § 1225(b)(2) while his removal proceedings were pending. The immigration court has found Petitioner to be removable. Petitioner appealed that decision to the Board of Immigration Appeals (although he never filed a brief in support), which still remains pending. ECF No. 6-7; ECF No. 6-8.

Petitioner filed his first Petition for Habeas Corpus ("First Petition") on February 23, 2026, seeking immediate release from custody or a bond hearing. *See Prado Orozco v. Raycraft*, 2:26-cv-10618 (E.D. Mich. 2026). The First Petition was largely predicated on Petitioner's allegedly unlawful confinement under 8 U.S.C. § 1225(b)(2)—which provides for mandatory detention without an opportunity for bond during removal proceedings—rather than under 8 U.S.C. § 1226(a), which

3

provides an opportunity for discretionary bond. *See Prado Orozco*, 2:26-cv-10618, ECF No. 1, PageID.9–14. In making this argument, Petitioner joined the wave of immigration detainees in ICE custody across the country who challenged their confinement under § 1225(b)(2) without an opportunity for bond as legally erroneous and unconstitutional. *See Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *1 (D. Idaho Apr. 7, 2026) (describing "a deluge of habeas actions" resulting from ICE's detention of thousands of noncitizens under § 1225(b)(2) rather than § 1226(a)). Petitioner also raised other arguments, including a violation of due process because of ICE's alleged denial of proper medical care for his hip injury. *Prado Orozco*, 2:26-cv-10618, ECF No. 1, PageID.25.

The Court granted the First Petition, finding that Petitioner was unlawfully detained under § 1225(b)(2), and that he should be detained under § 1226(a)—making him entitled to discretionary detention, and thus, a bond hearing. *Prado Orozco*, 2:26-cv-10618, ECF No. 12, PageID.141. The Court also found that Petitioner's detention without an opportunity for bond was a violation of the Due Process Clause of the Fifth Amendment. *Id.* at PageID.145. However, the Court rejected Petitioner's medical care argument, noting that Petitioner failed to describe his worsening medical condition and failed to allege any facts that officials were disregarding his hip injury. *Id.* at PageID.147. Ultimately, the Court ordered that

Petitioner be given a bond hearing under § 1226(a) or be released if the bond hearing was not provided within seven days. *Id.* at PageID.149.

Immigration authorities timely complied with the Court's order. Within four days, the immigration court held a bond hearing for Petitioner, found that he presented a flight risk, and denied him bond. *Prado Orozco*, 2:26-cv-10618, ECF No. 13, PageID.151.

Petitioner filed a second Petition for Habeas Corpus ("Second Petition") on June 15, 2026, arguing that although he received his bond hearing, his continued custody is unlawful and unconstitutional. *See* ECF No. 1. Petitioner notes that in 2018, he was diagnosed with severe hip arthritis due to previously undiagnosed congenital hip dysplasia, which required a total hip replacement. *Id.* at PageID.8. He alleges that while he has been detained in Monroe County Jail, his hip pain has worsened "to the point of being unbearable at times." *Id.*; ECF No. 1-2, PageID.323. He has complained to the medical staff about his hip pain on some occasions, and they have treated his pain with various pain medications. ECF No. 1, PageID.8.

Dr. Eric C. Bouwens, M.D., a board-certified family medicine practitioner, talked with Petitioner over the phone and evaluated Petitioner's medical case for the purpose of assisting him with this Second Petition. Dr. Bouwens has rendered his professional opinion that the medical staff at the Monroe County Jail have been neglectful and lack awareness of the possible causes of Petitioner's pain after hip

5

replacement. ECF No. 1-2, PageID.324. Dr. Bouwens explained that when severe pain arises several years after a hip replacement, it requires urgent medical evaluation. *Id.* Such pain could be related to infection of the hip joint, loosening of hardware, or psoas tendinitis. *Id.* Dr. Bouwens recommends that Petitioner "be released from detention to be able to immediately undergo a specialist evaluation consult with his previous orthopedic surgeon." *Id.*

Separately, Petitioner also notes that he applied for victim-based immigration relief under the Violence Against Women Act ("VAWA") while he has been in ICE custody, and on December 4, 2025, United States Citizenship and Immigration Services ("USCIS") issued a determination that Petitioner has established a prima facie case for classification under the self-petitioning provisions of VAWA. ECF No. 1, PageID.4; ECF No. 1-3. Petitioner argues that under VAWA and *Immigration Center for Women and Children ("ICWC") v. Noem*, he should not be detained or removed while his VAWA application is pending. ECF No. 1, PageID.5; *see ICWC v. Noem*, No. 2:25-cv-09848-AB-AS, 2026 WL 1455004 (C.D. Cal. May 20, 2026).

Based on these facts, Petitioner raises four claims. Counts I and III are closely related and pertain to Petitioner's hip injury. ECF No. 1, PageID.12–13. Specifically, Count I asserts that Petitioner's due process rights have been violated because of Monroe County Jail's deliberate indifference to his medical needs. Count III asserts that Petitioner's custody is unlawful because the Government cannot provide

reasonably safe conditions or medical evaluation. Next, Count II argues that Petitioner's detention violates due process because it is punitive and excessive as a result of the Monroe County Jail's neglect of Petitioner's hip injury. *Id.* Finally, Count IV argues that the Government violated the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), the *Accardi* doctrine, and due process by keeping Petitioner detained despite his VAWA prima facie determination. *Id.* at PageID.14.

Respondents disagree. Regarding Petitioner's medical care, Respondents argue that his medical care claim is not cognizable in habeas. ECF No. 6, PageID.677. They also argue that Petitioner failed to exhaust his administrative remedies with regard to his medical care. *Id.* at PageID.680–81. Further, they claim that Petitioner's detention is not punitive or excessive, because it is rationally related to the Government's legitimate interests in civil detention and because Petitioner can request the medical care he seeks. *Id.* at PageID.682–84. Regarding Petitioner's VAWA claim, Respondents argue that *Accardi* and APA claims are not cognizable in habeas and, in any event, they fail on the merits. *Id.* at PageID.686–87. Respondents further argue that the *ICWC* case is irrelevant and that Petitioner's detention does not violate any law or regulation. *Id.* at PageID.689–90.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2241, a district court has the "authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004). "Section 2241 confers jurisdiction to hear habeas corpus challenges to the legality of a noncitizen's detention." *Lopez v. Olson*, 815 F. Supp. 3d 576, 580 (W.D. Ky. 2025). "Although the Court 'may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.'" *Id.* (quoting *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020)).

## III.   DISCUSSION

### A. Medical Care Claims

Petitioner's related medical care claims (Count I and Count III) are premised on the notion that the staff at the Monroe County Jail have violated his due process rights by failing to adequately address his hip condition. ECF No. 1, PageID.12–13. Petitioner asserts that a medical care claim is appropriate for habeas corpus consideration because "[w]here continued civil detention exposes a medically vulnerable person to serious harm that the facility cannot adequately mitigate, habeas relief is available[.]" *Id.* at PageID.11, 13.

Respondents disagree. Respondents argue that Petitioner's medical care claim, at bottom, challenges his "conditions of confinement" and not the fact or legality of his custody, so habeas is inappropriate—particularly given that the medical care he needs can be provided in custody. ECF No. 6, PageID.677–78. Respondents also assert that Petitioner has not complained of his hip pain to medical staff in three months, has never filed a grievance about medical care, and has not requested to see an outside physician. Respondents argue that Petitioner should be required to exhaust his remedies administratively before bringing a habeas suit. *Id.* at PageID.680–81.

The Court begins its analysis with whether Petitioner's medical claims are cognizable in habeas. "Section 2241 provides jurisdiction to district courts over habeas petitions when a petitioner 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020) (quoting 28 U.S.C. § 2241(c)(3)). When a petitioner brings claims under § 2241, "the relief available is circumscribed." *Id.* "That is because the purpose of a writ of habeas corpus is to contest 'the very fact or duration of… physical imprisonment[,]'" and "[i]t is employed when 'the relief that [a petitioner] seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment.'" *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1047 (E.D. Mich. 2020) (quoting *Lutz v. Hemingway*, 476 F. Supp. 2d 715, 718 (E.D. Mich. 2007)).

9

In contrast, "§ 2241 is not the proper vehicle for a [detainee] to challenge conditions of confinement." *Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013). "[C]onditions of confinement claims seeking relief in the form of improvement of prison conditions or transfer to another facility are not properly brought under § 2241." *Wilson*, 961 F.3d at 838. Rather, such claims are more appropriately brought under 42 U.S.C. § 1983 or *Bivens*.[1] *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Awshana*, 453 F. Supp. 3d at 1047.

Here, Petitioner's argument is that he is not receiving proper medical care in custody, which is depriving him of his due process right against deliberate indifference to his medical needs. On its face, this claim seems to challenge Petitioner's conditions of confinement—the care he receives in custody. But Petitioner emphasizes that the relief he requests is not better medical care or a change of conditions; rather, he seeks release from confinement because the medical staff at Monroe County Jail have "failed to provide the evaluation necessary to make detention medically safe." ECF No. 1, PageID.11; ECF No. 7, PageID.737–38.

Petitioner's argument falls short. Generally, "habeas corpus is not available to prisoners who are complaining only of mistreatment during their legal incarceration." *Martin v. Zych*, No. 2:09-10423, 2009 WL 398166, at *1 (E.D. Mich.

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

10

Feb. 17, 2009). "[I]f an inmate establishe[s] that his medical treatment amounts to cruel and unusual punishment, the appropriate remedy would be to call for proper treatment, or to award him damages; release from custody is not an option." *Awshana*, 453 F. Supp. 3d at 1047–48 (quoting *Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005)); *see also Martin*, 2009 WL 398166, at *1 ("A petition for writ of habeas corpus is not the proper vehicle for a prisoner's claim that prison officials have been deliberately indifferent to his medical needs, because release from custody is not an available remedy for a deliberate indifference claim."). As such, "[a] demand for release does not convert a conditions-of-confinement claim into a proper habeas request." *Nogales v. Dep't of Homeland Sec.*, 524 F. Supp. 3d 538, 543 (N.D. Tex. 2021). A petitioner cannot merely "tack[] a traditional habeas remedy on to a prototypical conditions-of-confinement claim" in order to "convert that classic civil rights claim into a habeas claim." *Id.* at 544 (quoting *Archilla v. Witte*, No. 4:20-cv-00596-RDP-JHE, 2020 WL 2513648, at *12 (N.D. Ala. May 15, 2020)); *see also McCarty v. Pitzer*, No. 96-2301, 1997 WL 225869, at *3 (7th Cir. Apr. 30, 1997) ("McCarty's challenge to the quality of his medical care does not question the fact, duration, or degree of his confinement, but rather its conditions… That McCarty's petition literally 'seeks' release… does not change this result."); *Pinson v. Carvajal*, 69 F.4th 1059, 1072–73 (9th Cir. 2023) ("[A] successful claim sounding in habeas

11

necessarily results in release, but a claim seeking release does not necessarily sound in habeas.").

Notably, however, "[i]n cases involving medical decisions, sometimes fine distinctions must be drawn" regarding whether habeas relief is appropriate. *Awshana*, 453 F. Supp. 3d at 1047. "[S]ection 2241 has been pressed into service in medical condition cases where the line of demarcation is fuzzy." *Id.* at 1048. The Sixth Circuit has recognized a narrow exception permitting medical-related claims in habeas cases where "the constitutional violations… can be remedied *only by release*." *Wilson*, 961 F.3d at 838 (emphasis added). This exception was frequently applied in the early days of the COVID-19 pandemic, where habeas petitioners argued that no conditions of confinement could possibly be imposed to prevent irreparable harm resulting from a COVID-19 infection. *See id.* at 837–38; *Awshana*, 453 F. Supp. 3d at 1048; *Malam v. Adducci*, 452 F. Supp. 3d 643, 650 (E.D. Mich. 2020). Petitioner invokes this case law in support of his request for release.

But Petitioner's case is materially different than this line of cases. Petitioner states once, in conclusory fashion, that release from custody is the "only remedy" that would allow him to address his medical needs. ECF No. 1, PageID.13. The record demonstrates that this assertion is untrue. Petitioner argues that he needs an orthopedic referral, x-rays, and other diagnostic tests performed, and that he should be seen by his original orthopedic surgeon. ECF No. 2, PageID.336. Petitioner has

12

offered no reason to conclude that this medical care is unavailable in custody. In fact, ICE healthcare policies state that a detainee can "ask for healthcare at any time" and can request to be seen in the medical clinic for sick calls, which are non-emergency healthcare visits. ECF No. 6-6, PageID.711–12. "If medically necessary, other services may include medications, lab or other diagnostic tests, x-rays, education and counseling, and regular appointments for serious medical conditions." *Id.* at PageID.712. A detainee who is unsatisfied with their care may fill out a medical grievance form. *Id.* Emergency healthcare is available in emergency situations. *Id.* And detainees can request to be seen by an outside medical professional. *Id.* In other words, all the healthcare that Petitioner needs is possible and available in custody. Because there are a "set of conditions of confinement that would remedy" Petitioner's medical risks, "Petitioner's claims are not cognizable in habeas[.]" *Switek v. Michigan*, 587 F. Supp. 3d 622, 626 (E.D. Mich. 2021).

This brings the Court to the next issue, which is an independent reason to deny Petitioner's medical care claims: exhaustion of administrative remedies. Requiring a party to exhaust administrative remedies allows agencies to apply their special expertise, discourages disregard of agency procedures, promotes judicial efficiency, and may create a useful record for later judicial consideration. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013); *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "The basic purpose of the exhaustion doctrine is to allow an administrative agency to

perform functions within its special competence—to make a factual record, to apply its expertise and to correct its own errors so as to moot judicial controversies." *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1092 (6th Cir. 1981).

Where, as here, "Congress has not clearly required exhaustion, sound judicial discretion governs whether or not exhaustion should be required." *Shearson*, 725 F.3d at 593 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)) (quotation marks omitted). Typically, exhaustion should be a condition for judicial review if it promotes the purposes described above. *Shawnee Coal Co.*, 661 F.2d at 1092–93. However, exhaustion is not required where administrative remedies would be inadequate or futile, where irreparable injury would result unless immediate judicial review is permitted, or where the administrative proceeding would be void. *Id.* at 1093.

Petitioner notes that he has only received pain medication to treat his hip so far; the medical staff have not ordered diagnostics or other treatment. ECF No. 1, PageID.3. But the evidence demonstrates only a few sick-call requests for hip pain and no requests for anything other than medicine. In June, July, and August of 2025, Petitioner complained of hip pain once a month, described as "on and off hip pain." ECF No. 6-10, PageID.724–25. He was given rounds of ibuprofen for each request. Petitioner did not complain of his hip pain again until February 16, 2026, where he requested his "medications restarted." *Id.* at PageID.730. He was prescribed Mobic.

14

Finally, at Petitioner's last hip-related sick call visit, dated March 3, 2026, he stated that Mobic was not helping. *Id.* He was prescribed Pamelor and was told to "[k]ite medical if symptoms do not improve." *Id.*

The evidence does not show that Petitioner ever informed the medical staff that his hip pain is "worsening" (as he told Dr. Bouwens), rather that he is experiencing pain "on and off." *See* ECF No. 2-2, PageID.647; ECF No. 6-10. The evidence does not show that Petitioner has requested imaging or other interventions; instead, it only reflects a request for medication. Importantly, too, the evidence does not show that Petitioner ever filed a medical grievance for the lack of other medical interventions and does not show that Petitioner ever requested to see a doctor from outside the facility. If Petitioner addressed the concerns he has now in a sick call, in a grievance, or in a request for an outside practitioner, it is possible that the issues could be resolved without Court intervention. Moreover, if Petitioner was denied this medical care after express requests for it, there would be a record as to why that care was denied and the Court would, therefore, have a better record to establish whether Petitioner's rights were truly violated. Petitioner must attempt the administrative processes available to him to address his medical conditions in custody. *See, e.g.*, *Suwarsky v. Cornell*, No. 87-2083, 1989 U.S. App. LEXIS 290, at *5 (6th Cir. Jan. 12, 1989) (inmate could not state a claim for deliberate indifference when he failed to follow the facility's procedures for requesting medical attention).

15

Furthermore, Petitioner has offered no reason why exhaustion should not be applied here. Nothing in the record suggests that these administrative processes would be futile or void. As for irreparable harm, Petitioner included the report of Dr. Bouwens, who states that Petitioner urgently needs to be seen by an orthopedic specialist. ECF No. 1-2. However, Petitioner has offered no evidence that requesting one while in custody would be insufficient such that Petitioner would suffer irreparable harm without immediate judicial review.

Therefore, Petitioner's related medical care claims (Count I and Count III) fail.

## B. VAWA Claim

Petitioner's VAWA claim (Count IV) argues that ICE must account for the VAWA statutory scheme when making custody and enforcement decisions, and that Petitioner's VAWA prima facie determination entitles him to interim protections. ECF No. 1, PageID.14. He alleges that his detention, therefore, is arbitrary and capricious, in violation of the INA, APA, and *Accardi* doctrine, and violative of the Fifth Amendment Due Process Clause. Petitioner relies on *ICWC v. Noem* as the bedrock for his arguments. *Id.* In response, Respondents provided a host of reasons why Petitioner's APA and *Accardi* claims are not cognizable in habeas and fail on the merits. *See* ECF No. 6, PageID.685–691. Respondents further argue that Petitioner's detention is not unlawful under the INA, that the prima facie

16

determination does not make his detention unconstitutional, and that the *ICWC* case is inapplicable to Petitioner. *Id.* at PageID.689–90.

First, the Court addresses the APA and *Accardi* facets of Count IV. Respondents argue that such claims cannot be brought in habeas; that Petitioner cannot bring an APA claim because there is another adequate remedy at law; and that ICE's conduct does not violate any regulation or statute, so APA and *Accardi* claims cannot be sustained. ECF No. 6, PageID.685–691. Petitioner's reply fails to contest these arguments. Indeed, Petitioner seems to concede that he is not pursuing an actual APA or *Accardi* claim; rather, he suggests that these are just considerations in a due process analysis. *See* ECF No. 7, PageID.738–39, 744–45. The Court is persuaded by Respondents' argument that there is another adequate remedy at law, which precludes an APA claim, and that Petitioner has failed to identify a regulation that was violated, as necessary to establish an *Accardi* claim. *See* ECF No. 6, PageID.686–90; *see Bangura v. Hansen*, 434 F.3d 487, 500 (6th Cir. 2006) ("To state a claim for relief under the APA, a plaintiff must allege that his or her injury stems from a final agency action for which there is no other adequate remedy in court."); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (holding that an agency must follow its own regulations that have the force and effect of law). Therefore, the Court will not consider the APA or *Accardi* claims to the extent Petitioner intends them as separate bases for habeas relief under Count IV.

17

Next, the Court considers the VAWA statutory framework in the INA, the *ICWC* case, and due process. The Violence Against Women Act of 1994, which amended the INA, "created the VAWA self-petition, which provided that noncitizens with abusive qualifying family members can 'self-petition' for family-based immigrant visas without their abuser's knowledge, consent, or participation." *ICWC*, 2026 WL 1455004, at *3 (citing 8 U.S.C. §§ 1101(a)(51), 1154(a)(1)(A)(iii), (B)(iii)).

After receiving a self-petition, USCIS determines whether the evidence submitted establishes a prima facie case for VAWA relief. *See* USCIS Policy Manual, vol. 3, pt. D, ch. 5.A.1., https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-5. If USCIS concludes that the self-petitioner has addressed each of VAWA's eligibility requirements, it issues a Notice of Prima Facie Case. *See id.* The Notice "does not confer immigration status or a benefit," and it "is not a determination that the self-petitioner established eligibility or that the self-petitioner has met his or her burden of proof." *Id.* However, self-petitioners who establish a prima facie case are eligible for certain public benefits "such as welfare, health, disability, or unemployment and similar benefits while their petitions are pending." *ICWC*, 2026 WL 1455004, at *4 (citing 8 U.S.C. §§ 1611(a), 1641(c)).

The *ICWC* case concerns ICE's implementation of a new enforcement policy in 2025 that repealed prior policies regarding noncitizens with pending victim-based

benefit petitions, including VAWA petitions. *See id.* at *5–*7. ICE's 2011 policy provided that it was generally against ICE policy to initiate removal proceedings against known victims of a crime, and that exercising favorable discretion—such as release and deferral or a stay of removal—would generally be appropriate. *Id.* at *6.[2] ICE's 2021 policy echoed these policy choices and added that ICE would typically request expedited adjudications of victim-based benefit petitions from USCIS and would consider a person's eligibility for victim-based benefits a positive discretionary factor. *Id.*

In 2025, ICE issued an updated policy that modified some of these prior stances:

> [T]he 2025 Guidance establishes that the following policies govern ICE officers' enforcement actions towards individuals with pending victim-based benefit petitions: officers should (1) "coordinate and deconflict internally" and with law enforcement agencies "to ensure criminal investigative and other enforcement actions will not be compromised"; (2) "consult with" local ICE attorneys only "to ensure any such [civil enforcement] action is consistent with applicable legal limitations"; (3) need not consider a noncitizen being "a victim of a crime" as "a positive discretionary factor"; and (4) will not "routinely request expedited adjudications from USCIS," but may do so on a case-by-case basis when "it is in ICE's best interests."

---

[2] Notably, Petitioner had not yet applied for VAWA benefits at the time he was arrested, so this portion of ICE's policy would not be applicable to Petitioner because ICE could not have known he was a victim of a crime. *See Ayala-Morales v. Olson*, No. 2:26-cv-00375-JRS-MJD, 2026 WL 1781976, at *3 (S.D. Ind. June 22, 2026).

*Id.* (internal citations omitted).[3]

Ultimately, the *ICWC* court granted preliminary injunctive relief on a classwide basis and stayed ICE's 2025 policy because the plaintiffs were likely to succeed on the merits of their APA claims against the 2025 policy. *See id.* at \*33–\*36, \*47.

The *ICWC* case does little to aid Petitioner's argument that his detention is unlawful. As an initial matter, *ICWC*'s persuasiveness is highly limited by the fact that it is in a non-final, preliminary injunction posture currently on appeal from a different district that is not even within this Circuit. *See Rauda Choto v. Ladwig*, No. 26-0322, 2026 WL 1652576, at \*1–\*2 (W.D. La. June 8, 2026) (rejecting the petitioner's argument under *ICWC* because the court was "not persuaded that the existence of a non-final order entered in a separate litigation independently establishes" the petitioner's entitlement to relief).

---

[3] In addition to the express 2025 policy, the plaintiffs in *ICWC* alleged that the 2025 policy resulted in two additional, unwritten policies: the De Facto Revocation Policy and the Blind Removal Policy. *See ICWC*, 2026 WL 1455004, at \*7. These policies are not applicable to Petitioner and are irrelevant to this case. The De Facto Revocation Policy refers to ICE not honoring USCIS grants of deferred action to pending VAWA, U-visa, and T-visa petitioners. *Id.* This is irrelevant to Petitioner because he has not been granted deferred action. The Blind Removal Policy refers to ICE detaining U-visa and T-visa petitioners who have requested a stay of removal without first conducting an inquiry into whether their petitions present a prima facie case. *Id.* This is irrelevant to Petitioner because he has not applied for a U-visa or T-visa.

Furthermore, *ICWC* analyzes the ICE enforcement policy under the APA, not as statutory violations of the INA. Thus, the case is unhelpful to Petitioner because he cannot state a claim under the APA and he identifies no other reason why his detention possibly violates the INA. A pending VAWA application "does not, standing alone, confer lawful immigration status… or create a statutory entitlement to release from custody… Petitioner has not identified a statute or binding regulation that prohibited Respondents from detaining him while his application remained pending." *Flores v. Blanche*, No. 26-5446, 2026 WL 2069995, at *2 (D.N.J. July 17, 2026) (discussing *ICWC*'s limitations in the context of U-visa petitions). ICE's internal policy "does not, without more, create a judicially enforceable right to release or restrict an agency's statutory authority to detain an individual[.]" *Id.* In sum, Petitioner has not demonstrated that his custody is unlawful under the governing statute in a manner that would entitle him to habeas relief.

Nor does *ICWC* help Petitioner's claim that his detention while having a VAWA prima facie petition violates his constitutional right to due process. The *ICWC* case, where relevant to Petitioner's claims here, had nothing to do with due process.[4] Thus, to the extent Petitioner relies on *ICWC* for his VAWA-related due process claim, his reliance is misplaced.

---

[4] In *ICWC*, the plaintiffs raised a claim that ICE's De Facto Revocation Policy violated their Fifth Amendment due process rights. *ICWC*, 2026 WL 1455004, at *40. But as this Court noted in footnote 3, *supra*, the De Facto Revocation Policy is

Petitioner cites no other relevant authority in support and offers no other analysis. He does not cite any case law that would support the conclusion that detention while having a VAWA prima facie determination is a violation of substantive or procedural due process. Petitioner does not even cite the governing standards for substantive or procedural due process violations, let alone provide any cogent analysis of those issues. *See Handy-Clay v. Memphis*, 695 F.3d 531, 547–48 (6th Cir. 2012) (noting that a plaintiff may have a substantive due process claim if government action deprives him of a specific constitutional guarantee or shocks the conscience, which means only the most "brutal" and "egregious official conduct."); *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (stating that before an alien can demonstrate a violation of procedural due process, he must show that the Due Process Clause is triggered, and then apply the three-factor test in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) to determine what process is due).[5]

---

not applicable to Petitioner. *ICWC*'s due process analysis does not extend to ICE's 2025 policy in general.

[5] The *Mathews v. Eldridge* balancing test requires courts to consider: "(1) the private interest affected, (2) the risk of erroneous deprivation of that private interest and the value of any additional safeguards, and (3) the government's interest, including the fiscal and administrative burden the additional safeguards would impose." *Silvestre-Gregorio*, 983 F.3d at 852 (citing *Mathews*, 424 U.S. at 334–35).

22

Therefore, Petitioner's VAWA-related claim (Count IV) fails.

**C. Punitive and Excessive Detention – Substantive Due Process Claim**

Petitioner's substantive due process claim (Count II) argues that as a civil detainee, his detention is only lawful if reasonably related to a legitimate nonpunitive governmental purpose and not excessive in relation to those purposes. ECF No. 1, PageID.12. He argues that his continued detention in a facility that is not meeting his medical needs is punitive and excessive. *Id.* at PageID.12–13. Respondents argue that Petitioner's detention is not punitive because it is rationally related to the Government's legitimate interest in preventing Petitioner's flight before removal proceedings conclude. ECF No. 6, PageID.682–83. Respondents further argue that Petitioner's detention is not excessive because the medical care that Petitioner needs is available in ICE custody. *Id.* at PageID.683.

Immigration detention is civil custody, which means that the detention must be "nonpunitive in purpose and effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). However, "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno*, 481 U.S. 739, 746 (1987). In the immigration context, "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). Civil detention is improperly punitive and violates the Due Process Clause if it is not rationally related to a legitimate government interest

23

or is excessive in relation to that purpose. *See J.H. v. Williamson Cnty.*, 951 F.3d 709, 717 (6th Cir. 2020).

It is well recognized that the Government has a legitimate interest in ensuring the appearance of a noncitizen at immigration proceedings. *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026). Detaining a noncitizen who is a flight risk during removal proceedings is rationally related to that interest. *See id.*; *Demore*, 538 U.S. at 531. In this case, the immigration judge denied Petitioner bond after finding him to be a flight risk, given his multiple illegal reentries into the United States and the fact that he has already been ordered removed by the immigration court. ECF No. 6-9, PageID.721; *see Baidas v. Jennings*, 123 F. Supp. 2d 1052, 1059 (E.D. Mich. 1999) ("Aliens who are under a final order of removal surely present a higher risk of flight…"). Thus, Petitioner's detention is rationally related to a legitimate government interest.

Nor can Petitioner's detention be considered excessive because of his medical concerns. As already explained at length, Petitioner has access to medical care in custody. He is free to request medical care at any time. There is no record that Petitioner has ever requested additional intervention for his hip-related issues beyond medication. There is no record that Petitioner has ever filed a medical grievance. And there is no record that Petitioner has ever requested to see an outside medical practitioner. Petitioner has provided no reason why the Court should

24

presume these processes, which are available to him in ICE custody, would be ineffective or futile to address or resolve his medical issues. "[T]he 'availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure.'" *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004) (citation omitted).

Therefore, Petitioner's punitive and excessive punishment claim (Count II) fails.[6]

---

[6] The Court briefly addresses Petitioner's argument in reply. In Petitioner's reply, he combines his medical care argument and his VAWA argument, claiming that when both are considered in addition to his prolonged detention, his detention is excessive and punitive. ECF No. 7, PageID.747. However, as discussed, neither Petitioner's medical issue nor the VAWA prima facie determination provide any conceivable basis for a due process violation or entitlement to habeas relief, so considering them together does nothing to advance Petitioner's argument. Moreover, Petitioner failed to raise the claim that his custody is unconstitutionally prolonged in his petition, so it is deemed waived. *See Sims v. Piper*, No. 07-14380, 2008 WL 3318746, at *5 (E.D. Mich. Aug. 8, 2008) (citing *United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006)) ("[T]he Sixth Circuit repeatedly has recognized that arguments raised for the first time in a party's reply brief are waived.").

Furthermore, Petitioner seems to contest the immigration judge's exercise of discretion and weighing of the evidence at his bond hearing, because the immigration judge did not find that his VAWA determination or medical issues entitled him to bond. ECF No. 7, PageID.746–47. To the extent that this is Petitioner's argument, the Court has no jurisdiction to second guess the immigration judge's discretion in weighing this evidence. *See* 8 U.S.C. § 1226(e); *De Leon Trejo v. Bullock*, No. 26-5186, 2026 WL 2057094, at *2 (6th Cir. May 14, 2026) (noting that under 8 U.S.C. § 1226(e), "arguments challenging the merits of the IJ's decision and the IJ's exercise of discretion fall outside our jurisdictional reach."). Notably, Petitioner has not alleged that he was denied a meaningful opportunity to present his

## D. Proper Respondents

Respondents argue that Petitioner has failed to name the proper respondent in this habeas suit. They assert that the only proper respondent is the warden of the Monroe County Jail. ECF No. 6, PageID.675–76. Petitioner argues in response that Sixth Circuit law has recognized that the relevant custodian in immigration-custody cases is the ICE District Field Office Director, and that no case law bars the naming of multiple officials in such habeas petitions. ECF No. 7, PageID.748–49.

In *Rumsfeld v. Padilla*, the Supreme Court held that "there is generally only one proper respondent to a given prisoner's habeas petition," and that "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." 542 U.S. 426, 435 (2004).

However, *Padilla* sidestepped any definitive ruling about how the immediate custodian rule operates in the immigration detention context. *See id.* at 435 n.8. Sixth Circuit case law, which was not affected by *Padilla*'s holding, *see Cid-Barrios v.*

---

case in support of bond, such that the hearing was a sham or pretense. *See De Leon Trejo*, 2026 WL 2057094, at *2 (noting that if a bond hearing is a sham or pretense, it violates the Due Process Clause). And to the extent that Petitioner argues his circumstances have changed since his bond hearing, he can simply request another bond hearing. *See* 8 C.F.R. § 1003.19(e).

*Raycraft*, 814 F. Supp. 3d 839, 845 (E.D. Mich. 2025), states that the "INS[7] District Director for the district where [the petitioner] is being detained… [is] the proper respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). The Sixth Circuit explained that the District Director is the proper respondent because he is a noncitizen detainee's "immediate custodian." *Id.* at 322; *see also id.* at 320 ("[A]lthough the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners.").

In *Roman*, the Sixth Circuit seemingly rejected the idea that more than one respondent could be named in a noncitizen's habeas petition. *See id.* at 321 ("Section 2243 states that a writ of habeas corpus 'shall be directed to *the* person having custody of the person detained,' which suggests that only one individual can properly be named as the respondent to a habeas corpus petition."). However, the Sixth Circuit held that a higher supervisory official, like the Attorney General, could be the proper

---

[7] INS, the Immigration and Naturalization Service, was replaced by the Department of Homeland Security in 2003, which itself is divided into three subgroups: USCIS, CBP, and ICE. *See* U.S. Citizenship and Immigration Services, *The Homeland Security Act*, https://www.uscis.gov/i-9-central/form-i-9-resources/handbook-for-employers-m-274/10-why-employers-must-verify-employment-authorization-and-identity-of-new-employees/11-the-homeland-security-act (last visited Apr. 30, 2026). The "INS District Director," as stated in *Roman*, is the equivalent of an ICE District Director today.

27

respondent to a habeas corpus petition under "extraordinary circumstances… necessary to preserve a person's access to habeas corpus relief," such as where immigration authorities exercised their power to transfer a detainee out of district "in a clear effort to evade an alien's habeas petitions." *Id.* at 325–26.

Here, no extraordinary circumstances exist. There is no indication that naming a more remote supervisory authority is necessary to preserve Petitioner's habeas rights. In line with *Roman*, therefore, Kevin Raycraft, the Director of the ICE Detroit Field Office, "is the proper respondent to be named" in this habeas petition. *Cid-Barrios*, 814 F. Supp. 3d at 845. All other Respondents are dismissed.

## IV.  CONCLUSION

For the foregoing reasons, the Petition for Habeas Corpus [ECF No. 1] is **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

Dated:  July 24, 2026

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge